## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | PENELOPE LAMLE,<br>by and through Joshua Lamle and Lexy Jobe,<br>next of friend and attorneys-in-fact; | ) ) ) |
| (2) | MARILYN GARRISON,<br>by and through Devra Boyd,<br>next of friend and attorney-in-fact; | ) ) ) |
| (3) | MAXINE HOUSTON,<br>by and through Dal Houston and Mary Powell,<br>next of friend and attorney-in-fact; | ) ) ) |
| | | ) |
| | Plaintiffs, | ) |
| | | ) |
| vs. | | )    Case No. CIV-22-391-JD |
| | | ) |
| (4) | JUSTIN BROWN, Director of Oklahoma<br>Department of Human Services, in his<br>Official capacity; | ) ) ) |
| (5) | MELODY ANTHONY, Director of<br>Oklahoma Health Care Authority, in her<br>Official capacity; and | ) ) ) |
| (6) | SUSAN EADS, Individually. | ) |
| | | ) |
| | Defendants. | ) |

## COMPLAINT

This is a civil action for declaratory and injunctive relief and money damages pursuant to 42 U.S.C. §1983 and §1988.  Plaintiffs, Penelope Lamle (**"Lamle"**), Marilyn Garrison (**"Garrison"**) and Maxine Houston (**"Houston"**) are individuals who applied for Medicaid benefits and are being improperly denied benefits.  Plaintiffs seek injunctive and declaratory relief against Defendants, Justin Brown (**"Brown"**) in his official capacity as Director of the Oklahoma Department of Human Services (**"OKDHS"**) and Melody Anthony (**"Anthony"**) in her official capacity as Director of the Oklahoma Health Care

1

Authority (**"OHCA"**) requiring OKDHS and OHCA to determine Plaintiffs eligible for Medicaid benefits.    Plaintiffs also seek compensatory and punitive damages against Defendant Susan Eads (**"Eads"**) in her individual capacity.

Defendants failure or refusal to determine Plaintiffs eligible for Medicaid benefits violates federal rights guaranteed to them and enforceable by them pursuant to 42 U.S.C. §1983; 42 U.S.C. §§1396a(a)(8); 42 C.F.R. §435.912; 42 C.F.R. §907(e)(1); Shanks-Marrs v. Lake, 2013 U.S. Dist. LEXIS 188627, *6-7 (W.D. Okla. June 14, 2013); Gragert v. Hendrick, 2014 U.S. Dist. LEXIS 8771, *8 (W.D. Okla. Jan. 24, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674, *17-18 (W.D. Okla. June 30, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916, *17-18 (W.D. Okla. Aug. 22, 2014) and Ansley v. Lake, 2016 U.S. Dist. LEXIS 30014, *11 (W.D. Okla. Mar. 9, 2016).    Plaintiffs challenge Defendants actions or inactions as detailed below.

Defendant Eads acting under color of law has actively, knowingly, intentionally and maliciously deprived Plaintiffs of their constitutional, statutory and legal rights by ignoring clearly established federal Medicaid law.    The federal Medicaid law entitling Plaintiffs to Medicaid benefits is clearly established in 42 U.S.C. §1396p(c)(1)(I) and in the cases of Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021); Gragert v. Lake, 541 Fed. Appx. 853 (10th Cir. 2013); Gragert v. Hendrick, 2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916 (W.D. Okla. Aug. 22, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674 (W.D. Okla. June 30, 2014); Lemmons v. Lake, 2013 U.S. Dist. LEXIS 39030 (W.D. Okla. Mar. 21, 2013) (later vacated as being mute) and

Harper v. Okla. ex rel. Okla. Dep't of Human Serv's, 2011 U.S. Dist. LEXIS 157628 (W.D. Okla. Mar. 22, 2011).

PARTIES

1.      Plaintiff Lamle is a 79-year-old resident of Enid, Garfield County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. §1396 et seq.  Joshua Lamle and Lexy Jobe are Lamle's acting attorneys-in-fact pursuant to a power of attorney executed by Lamle.  (See Lamle's Uniform Durable Power of Attorney, attached hereto as **Exhibit 1**.)

2.      Plaintiff Garrison is an 82-year-old resident of Hennessey, Kingfisher County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. §1396 et seq.  Devra Boyd is Garrison's acting attorney-in-fact pursuant to a power of attorney executed by Garrison.  (See Garrison's Uniform Durable Power of Attorney, attached hereto as **Exhibit 2**.)

3.      Plaintiff Houston is a 98-year-old resident of Alva, Woods County, Oklahoma who applied for benefits under Oklahoma's medical assistance program, pursuant to 42 U.S.C. §1396 et seq.  Dal Houston and Mary Powell are Houston's acting attorneys-in-fact pursuant to a power of attorney executed by Houston.  (See Houston's Uniform Durable Power of Attorney, attached hereto as **Exhibit 3**.)

4.      Defendant Brown is Director of OKDHS.  Brown is sued in his official capacity.  As Director of OKDHS, Brown has a duty to ensure the State of Oklahoma's federally funded Medicaid program is administered in accordance with federal and state law.

3

5.     Defendant Anthony is Director of OHCA.  Anthony is sued in her official capacity.  As Director of OHCA, Anthony has the duty to ensure the State of Oklahoma's federally funded Medicaid program is administered in accordance with federal and state law.

6.     Defendant Eads is an Assistant General Counsel of OKDHS.  Eads is sued in her individual capacity.

JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. §1331.

8.     Pursuant to 18 U.S.C. §1343(a)(4), this Court is authorized to enter judgment for violations of 42 U.S.C. §1983 and §1988.

9.     This Court is authorized to grant injunctive relief pursuant to 28 U.S.C. §2202.

10.    Venue is proper in this Court under 28 U.S.C. §1391(e)(1) as Plaintiffs reside in this District and the events giving rise to the claims contained herein occurred in this District.

LEGAL ALLEGATIONS

11.    Title XIX of the Social Security Act is codified at 42 U.S.C. §1396 et seq. and governs the federal Medicaid program.  It authorizes the establishment by states of medical assistance programs for individuals who meet certain eligibility requirements. These programs are jointly funded by the federal and state governments and are designed by states within the framework of options and requirements established under the Medicaid statute.

4

12.    Pursuant to the federal statutory scheme, "all individuals wishing to make application" for Medicaid benefits "shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. §1396a(a)(8).

13.    42 C.F.R. §435.912(a)(1) provides, "Timeliness standards refer to the maximum period of time in which every applicant is entitled to a determination of eligibility, subject to the exceptions in paragraph (e) of this section."

14.    42 C.F.R. §435.912(b)(1) states, "The agency must establish in its State plan timeliness and performance standards for, promptly and without undue delay determining eligibility for Medicaid for individuals who submit applications to the single State agency of its designee."

15.    42 C.F.R. §435.912(c)(3)(ii) says, "Except as provided in paragraph (e) of this section, the determination of eligibility for any applicant may not exceed forty-five days for all other applicants."

16.    42 C.F.R. §435.912(e) provides, "The agency must determine eligibility within the standards except in unusual circumstances, for example – (1) When the agency cannot reach a decision because the applicant or an examining physician delays or fails to take a required action, or (2) When there is an administrative or other emergency beyond the agency's control."

17.    42 C.F.R. §435.912(g) states, "The agency must not use the time standards – (1) As a waiting period before determining eligibility; or (2) As a reason for denying eligibility (because it has not determined eligibility within the time standards)."

18.    In interpreting this statute and its related regulations, the District Court for the Western District of Oklahoma stated, "Nonetheless, the statute and regulation are clear that delay should be the exception and not the rule.  The court therefore concludes a rebuttable presumption of a violation of the reasonable promptness requirement occurs when the agency fails to issue an eligibility decision within 45 days of the date of the application.  In those instances, the burden of production and proof shifts to the agency to establish that one of the two exceptions to the 45-day limit applies."  Shanks-Marrs, 2013 U.S. Dist. LEXIS 188627 at *7-8.

19.    Further, 42 C.F.R. §435.907(e) titled "Limits on information" says under subparagraph (1) that "The agency may only require an applicant to provide the information necessary to make an eligibility determination or for a purpose directly connected to the administration of the State plan."

20.    The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty or property without due process of law" while the Equal Protection Clause of the Fourteenth Amendment provides, "nor deny to any person within its jurisdiction the equal protection of the laws."

21.    Courts have held Medicaid applicants have a property interest protected by the Due Process Clause of the Fourteenth Amendment.  Lewis v. New Mexico v. Dep't of Health, 94 F.Supp.2d 1217, 1237 (N.M. 2000); Mallette v. Arlington County Employees' Retirement System II, 91 F.3d 630, 639-40 (4th Cir. 1996); National Ass'n of Radiation Survivors v. Derwinski, 994 F.2d 583, 588 (9th Cir. 1992); Haitian Refugee Ctr., Inc. v. Nelson, 872 F.2d 1555, 1562 (11th Cir. 1989); Daniels v. Woodbury, 742 F.2d 1128, 1132

(8th Cir. 1984); Holbrook v. Pitt, 643 F.2d 1261, 1278 n.35 (7th Cir. 1981); Kelly v. Railroad Retirement Bd., 625 F.2d 486, 490 (3rd Cir. 1980); Griffeth v. Detrich, 603 F.2d 118, 120-22 (9th Cir. 1979).

22.     According to 42 U.S.C. §1396p(c)(1)(I), an individual is not penalized for a transfer of assets in exchange for a promissory note which: "(i) has a repayment term that is actuarially sound (as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration, (ii) provides for payments to be made in equal amounts during the term of the loan, with no deferral and no balloon payments made; and (iii) prohibits the cancellation of the balance upon the death of the lender."

23.     Medicaid applicants transferring assets in exchange for promissory notes qualified under 42 U.S.C. §1396p(c)(1)(I) has been sanctioned by the Tenth Circuit in the cases of Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021) and Gragert v. Lake, 541 Fed. Appx. 853 (10th Cir. 2013); and by the District Court for the Western District of Oklahoma in the cases of Gragert v. Hendrick, 2014 U.S. Dist. LEXIS 8771 (W.D. Okla. Jan. 24, 2014); Frantz v. Lake, 2014 U.S. Dist. LEXIS 116916 (W.D. Okla. Aug. 22, 2014); Peterson v. Lake, 2014 U.S. Dist. LEXIS 89674 (W.D. Okla. June 30, 2014); Lemmons v. Lake, 2013 U.S. Dist. LEXIS 39030 (W.D. Okla. Mar. 21, 2013) (later vacated as being mute) and Harper v. Okla. ex rel. Okla. Dep't of Human Serv's, 2011 U.S. Dist. LEXIS 157628 (W.D. Okla. Mar. 22, 2011).

24.     In the Rose case decided September 28, 2021, the Tenth Circuit specifically rejected the use of the Sable test which included among other factors the use of: (1) whether

7

the loans were not arms-length transactions, (2) whether the loans were between family members not in the business of lending money, and (3) whether the loans were backed by collateral.  Rose, 14 F.4th at 1136.

FACTUAL ALLEGATIONS

25.    Plaintiff Lamle is a widow with three living adult children being Joshua Lamle, Jason Lamle and Lexy Jobe; and one deceased child being Darin Lamle.

26.    Plaintiff Lamle entered Greenbriar Nursing Home in Enid, Oklahoma on July 1, 2020, where she currently resides.  She is physically incapable of caring for herself.

27.    Plaintiff Lamle applied for Medicaid benefits on November 24, 2021 and has not received a decision from OKDHS regarding her application for eligibility for Medicaid benefits (167 days after applying for Medicaid).  (See Lamle's Request for Assessment Letter and Request for Benefits attached hereto as **Exhibit 4**).

28.    Plaintiff Lamle transferred assets in exchange for a promissory note pursuant to the explicit authority granted her in 42 U.S.C. §1396p(c)(1)(I) and the Rose, Gragert v. Lake, Gragert v. Hendrick, Frantz, Peterson, Lemmons and Harper cases.  (See Ex.4, p.4.)

29.    On February 2, 2022, OKDHS asked whether: (1) Plaintiff Lamle is in the business of lending money or selling property, (2) the borrower offered collateral to secure the promissory note to Plaintiff Lamle, (3) the borrower did anything with the assets after purchasing them from Plaintiff Lamle, (4) Plaintiff Lamle did anything with the promissory note received from borrower, and (5) has there been a pattern of lending and repayment between Plaintiff Lamle and the borrower.  (See OKDHS's email attached hereto as **Exhibit 5**, p.7-9).

8

30.    On February 11, 2022, Plaintiff Lamle responded to OKDHS's requests by explaining the promissory note met the requirements of 42 U.S.C. §1396p(c)(1)(I) and the questions being asked were in direct violation of the Tenth Circuit's decision in the Rose case.  (See Lamle's email, Ex.5, p.6).

31.    On March 2, 2022, Defendant Eads responded by threatening to deny Plaintiff Lamle's Medicaid application if she did not produce answers to the OKDHS's questions.  (See Defendant Ead's email, Ex.5, p.5).

32.    Again, on March 2, 2022, Plaintiff Lamle explained to Defendant Eads that OKDHS's questions violated the requirements of 42 U.S.C. §1396p(c)(1)(I) and the Tenth Circuit's decision in the Rose case; and that OKDHS was only entitled to ask necessary or relevant questions under 42 C.F.R. §435.907(e).  (See Lamle's email, Ex.5, p.4).

33.    On April 20, 2022, Defendant Eads insisted Plaintiff Lamle would answer OKDHS's questions and again threatened to deny Plaintiff Lamle's Medicaid application if she failed to do so.  (See Defendant Ead's email, Ex.5, p.2-3).

34.    Finally, on April 21, 2022, Plaintiff Lamle explained for the third time that OKDHS's questions were not necessary or relevant to the requirements of 42 U.S.C. §1396p(c)(1)(I), prohibited by the Tenth Circuit's decision in the Rose case; and therefore, not necessary or relevant under 42 C.F.R. §435.907(e).  (See Lamle's email, Ex.5, p.1-2).

35.    OKDHS and OHCA have failed or refused to take any action on Plaintiff Lamle's Medicaid application.

36.    As of August 3, 2021, Plaintiff Lamle met the eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

9

37.    Plaintiff Garrison is a widow with three adult children being Carla Humphrey, Vonda Jones and Devra Boyd.

38.    Plaintiff Garrison entered Greenbriar Nursing Home in Enid, Oklahoma on August 17, 2020 and transferred several times before entering the Hennessey Care Center in Hennessey, Oklahoma on August 16, 2021, where she currently resides.  She is physically incapable of caring for herself.

39.    Plaintiff Garrison applied for Medicaid benefits on December 6, 2021 and has not received a decision from OKDHS regarding her application for eligibility for Medicaid benefits (155 days after applying for Medicaid).  (See Garrison's Request for Assessment Letter and Request for Benefits attached hereto as **Exhibit 6**).

40.    Plaintiff Garrison transferred assets in exchange for a promissory note pursuant to the explicit authority granted her in 42 U.S.C. §1396p(c)(1)(I) and the Rose, Gragert v. Lake, Gragert v. Hendrick, Frantz, Peterson, Lemmons and Harper cases.  (See Ex.6, p.4.)

41.    On February 3, 2022, OKDHS asked whether: (1) Plaintiff Garrison is in the business of lending money or selling property, (2) the borrower offered collateral to secure the promissory note to Plaintiff Garrison, (3) the borrower did anything with the assets after purchasing them from Plaintiff Garrison, (4) Plaintiff Garrison did anything with the promissory note received from borrower, and (5) has there been a pattern of lending and repayment between Plaintiff Garrison and the borrower.  (See OKDHS's email attached hereto as **Exhibit 7**, p.7-8).

42.     On February 11, 2022, Plaintiff Garrison responded to OKDHS's requests by explaining the promissory note met the requirements of 42 U.S.C. §1396p(c)(1)(I) and the questions being asked were in direct violation of the Tenth Circuit's decision in the Rose case.  (See Garrison's email, Ex.5, p.6-7).

43.     On March 2, 2022, Defendant Eads responded by threatening to deny Plaintiff Garrison's Medicaid application if she did not produce answers to the OKDHS's questions.  (See Defendant Ead's email, Ex.7, p.5).

44.     Again, on March 2, 2022, Plaintiff Garrison explained to Defendant Eads that OKDHS's questions violated the requirements of 42 U.S.C. §1396p(c)(1)(I) and the Tenth Circuit's decision in the Rose case; and that OKDHS was only entitled to ask necessary or relevant questions under 42 C.F.R. §435.907(e).  (See Garrison's email, Ex.7, p.4).

45.     On April 20, 2022, Defendant Eads insisted Plaintiff Garrison would answer OKDHS's questions and again threatened to deny Plaintiff Garrison's Medicaid application if she failed to do so.  (See Ex.7, p.2-4).

46.     Finally, on April 21, 2022, Plaintiff Garrison explained for the third time that OKDHS's questions were not necessary or relevant to the requirements of 42 U.S.C. §1396p(c)(1)(I), prohibited by the Tenth Circuit's decision in the Rose case; and therefore, not necessary or relevant under 42 C.F.R. §435.907(e).  (See Ex.7, p.1-2).

47.     OKDHS and OHCA have failed or refused to take any action on Plaintiff Garrison's Medicaid application.

11

48.     As of October 12, 2021, Plaintiff Garrison met the eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

49.     Plaintiff Houston is a widow with two adult children being Dal Houston and Mary Powell.

50.     Plaintiff Houston entered the Share Convalescent Center in Alva, Oklahoma on May 27, 2020, where she currently resides.  She is physically incapable of caring for herself.

51.     Plaintiff Houston applied for Medicaid benefits on January 27, 2022 and has not received a decision from OKDHS regarding her application for eligibility for Medicaid benefits (103 days after applying for Medicaid).  (See Houston's Request for Assessment Letter and Request for Benefits attached hereto as **Exhibit 8**).

52.     Plaintiff Houston transferred assets in exchange for a promissory note pursuant to the explicit authority granted her in 42 U.S.C. §1396p(c)(1)(I) and the Rose, Gragert v. Lake, Gragert v. Hendrick, Frantz, Peterson, Lemmons and Harper cases.  (See Ex.8, p.3.)

53.     On February 3, 2022, OKDHS asked whether: (1) Plaintiff Houston is in the business of lending money or selling property, (2) the borrower offered collateral to secure the promissory note to Plaintiff Houston, (3) the borrower did anything with the assets after purchasing them from Plaintiff Houston, (4) Plaintiff Houston did anything with the promissory note received from borrower, and (5) has there been a pattern of lending and repayment between Plaintiff Houston and the borrower.  (See OKDHS's email attached hereto as **Exhibit 9**, p.5).

54.     Plaintiff Houston has not answered OKDHS's questions, and OKDHS and OHCA have failed or refused to take any action on Plaintiff Houston's Medicaid application.

55.     As of May 27, 2020, Plaintiff Houston met the eligibility requirements for Medicaid; and therefore, is eligible to be a Medicaid beneficiary as of that date.

56.     Plaintiffs have provided significant information to OKDHS to assist in the evaluation of their applications for Medicaid benefits.  Plaintiff have complied with all requests for information from OKDHS.

## COUNT I
## VIOLATION OF 42 U.S.C. §1396a(a)(8) AS DEFINED BY 42 C.F.R. §435.912

57.     Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

58.     No state court action is pending related to this matter.

59.     Plaintiffs are eligible and qualify for Medicaid benefits.

60.     Defendants have deprived Plaintiffs of their federal statutory rights by failing and refusing to provide Plaintiffs with Medicaid benefits with reasonable promptness pursuant to 42 U.S.C. §1396a(a)(8) and as defined by 42 C.F.R. §435.912.

61.     Defendants have further deprived Plaintiffs of their federal statutory rights by failing and refusing to act on Plaintiffs' applications for Medicaid benefits within 45 days after the filing their applications as provided in 42 C.F.R. §435.912.

62.     Defendants' failures and refusals directly violate 42 U.S.C. §1396a(a)(8) and 42 C.F.R. §435.912.

13

63.    Defendants have acted under color of state law when depriving Plaintiffs of their federal rights.

64.    As a direct and proximate result of the Defendants' violation of the Plaintiffs' federal statutory rights, Plaintiffs have sustained injuries and damages.

## COUNT II
## PRELIMINARY AND PERMANENT INJUNCTION

65.    Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

66.    Plaintiffs are without sufficient income or resources to pay for their current nursing home care.

67.    Although Plaintiffs are eligible for Medicaid benefits, Defendants have refused to determine them eligible, place them in Medicaid pay status and provide Medicaid benefits.

68.    Defendants' actions result in ongoing irreparable injury to Plaintiffs.

69.    Without Medicaid benefits, Plaintiffs face eviction from their nursing homes, and as a result, termination of personal care, medical care, shelter, food, and related necessary services.

70.    The benefits to Plaintiffs if a preliminary injunction is issued requiring the Defendants to pay Medicaid benefits to the Plaintiffs outweigh any damage that may be caused to the Defendants by said issuance.

71.    The public interest favors administering care to elderly individuals who are otherwise unable to provide for their own basic needs.

14

72.     Plaintiffs are substantially likely to prevail on the merits of their claims as Defendants have blatantly and flagrantly violated 42 U.S.C. §1396a(a)(8) and 42 C.F.R. §435.912.

## COUNT III
## DEFENDANT EADS' PERSONAL LIABILITY

73.     Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

74.     By it terms, 42 U.S.C. §1983 imposes personal liability on state and local officials who, acting under color of law in their individual capacity, deprive plaintiffs of rights created by the Constitution and federal law.

75.     Judges, prosecutors, some witnesses and legislators have absolute immunity from personal liability under 42 U.S.C. §1983. Stump v. Sparkman, 435 U.S. 349 (1978); Imbler v. Pachtman, 424 U.S. 409, 423-24 (1976); Briscoe v. LaHue, 460 U.S. 325 (1983) and Eastland v. U.S. Serviceman's Fund, 421 U.S. 491, 503 (1975).

76.     Except the President of the United States, all executive officials including the tens of thousands of public employees exercising state and local authority have only qualified immunity from suit. Mitchell v. Forsyth, 472 U.S. 511, 520-24 (1985).

77.     In the Medicaid case of Hobbs v. Zenderman, 579 F.3d 1171 (10th Cir. 2009), the Tenth Circuit held qualified immunity does not apply to protect a defendant if "the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct." Id. at 1183 citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

15

78.     Plaintiffs transferred assets in exchange for promissory notes pursuant to the explicit authority granted them in 42 U.S.C. §1396p(c)(1)(I) and the Rose, Gragert v. Lake, Gragert v. Hendrick, Frantz, Peterson, Lemmons and Harper cases.

79.     Defendant Eads has personally participated in processing or failing to process Plaintiffs' Medicaid applications in a manner complying with clearly established federal Medicaid law.

80.     Defendant Eads has instructed OKDHS to asked Plaintiff questions and elicit information from Plaintiffs which is beyond the established requirements of 42 U.S.C. §1396p(c)(1)(I) and the established case law, including the Tenth Circuit's decision in the Rose case.

81.     In both Plaintiffs Lamle and Garrison's cases, Defendant Ead's has personally asked those Plaintiffs questions and required them to provide her information which is clearly beyond the requirements of 42 U.S.C. §1396p(c)(1)(I) and the established case law, including the Tenth Circuit's decision in the Rose case.

82.     Although Plaintiffs Lamle and Garrison have provided Eads with the clear authority governing their Medicaid applications on 3 separate occasions, Eads has ignored this authority by insisting they answer questions and provide information which is well beyond clearly established governing authority.

83.     Additionally, 42 C.F.R. §435.907(e) prohibits Defendant Eads from asking for any information which is not necessary or relevant to processing Plaintiffs' Medicaid applications.

16

84.     On 2 separate occasions, Plaintiffs Lamle and Garrison have provided this authority to Defendant Eads which she has completely ignored by continuing to seek information which is neither necessary nor relevant in processing their Medicaid applications.

85.     In response to Plaintiffs Lamle and Garrison's refusal to provide the unnecessary and irrelevant information, Defendant Eads has personally threatened both Plaintiffs Lamle and Garrison to deny their Medicaid applications unless those Plaintiffs complied with her requests.

86.     Defendant Eads has begun acting in the same manner toward Plaintiff Houston.

87.     OKDHS and OHCA have routinely recognized 42 U.S.C. §1396p(c)(1)(I) and the Rose, Gragert v. Lake, Gragert v. Hendrick, Frantz, Peterson, Lemmons and Harper cases as clearly established authority governing the use of promissory notes in Medicaid cases in the Tenth Circuit by approving countless Medicaid applicants for benefits without asking any of the questions or seeking to elicit any of the information in which Eads seeks to promote.

88.     Defendant Eads acting under color of law has actively, knowingly, intentionally and maliciously deprived Plaintiffs of their constitutional, statutory and legal rights by ignoring clearly established Medicaid law.

89.     As a direct and proximate result of the Defendant Ead's violation of clearly established constitutional and Medicaid law, Plaintiffs have sustained injuries and damages.

17

CONCLUSION

WHEREFORE, premises considered, Plaintiffs request this Court grant the following relief:

A.     Enter preliminary and permanent injunctions ordering Defendants to cease denying Medicaid coverage to Plaintiffs and ordering Defendants to certify Plaintiffs eligible for Medicaid benefits effective as of the dates contained herein;

B.     Enter preliminary and permanent injunctions ordering Defendants to pay Medicaid benefits for Plaintiffs effective as of the dates contained herein;

C.     Enter preliminary and permanent injunctions ordering Defendants to evaluate Medicaid applications within 45 days after receiving Medicaid applications;

D.     Order the relief awarded herein shall at least be effective as of the first day of the third month before the month in which Plaintiffs applied for Medicaid benefits in accordance with 42 U.S.C. §1396a(a)(34);

E.     Order Defendant Eads to pay Plaintiffs both compensatory and punitive damages for violations of their clearly established constitutional and statutory rights;

F.     Grant Plaintiffs all attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

G.     Order any and all other relief deemed just and equitable.

Respectfully submitted,

/s/ Michael Craig Riffel
Michael Craig Riffel, OBA #16373
Katresa J. Riffel, OBA #14645
Megan Hickman, OBA #30106
Riffel Law Firm, P.L.L.C.

18

3517 Owen K. Garriott, Suite One
Enid, Oklahoma 73703
Telephone: (580) 234-8447
Facsimile: (580) 234-5547
criffel@westoklaw.com
kriffel@westoklaw.com
mhickman@westoklaw.com
Attorneys for Plaintiffs

19