IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PENELOPE LAMLE, by and through )
Joshua Lamle and Lexy Jobe, next )
friends and attorneys-in-fact; MARILYN )
GARRISON, by and through Devra )
Boyd, next friend and attorney-in-fact; )
and MAXINE HOUSTON, by and )
through Dal Houston and Mary Powell, )
next friends and attorneys-in-fact, )
                                                )
        Plaintiffs, )
                                                )
v. )    Case No. CIV-22-00391-JD
                                                )
DEBORAH SHROPSHIRE, Director of )
Oklahoma Department of Human )
Services, in her official capacity; )
SUSAN EADS, individually; and )
KEVIN CORBETT, CEO of Oklahoma )
Health Care Authority, in his official )
capacity, )
                                                )
        Defendants. )

## ORDER

Medicaid is a federal program implemented by participating states. *See* 42 U.S.C. § 1396 *et seq*. It was created to provide medical care to people "whose income and resources are insufficient to meet the costs of necessary medical services." *Id.* § 1396–1.

This action is brought by three individuals who, prior to their applications for Medicaid benefits, transferred substantial assets in exchange for promissory notes. After the state agency in charge of administering such benefits inquired about their eligibility, Plaintiffs sued. Now before the Court are three Motions to Dismiss ("Motions") [Doc.

Nos. 23, 24, 26] filed by Susan Eads ("Eads"), Deborah Shropshire ("Shropshire"),[1] and Kevin Corbett ("Corbett") (collectively, "Defendants"). They seek dismissal of Penelope Lamle ("Lamle"), Marilyn Garrison ("Garrison"), and Maxine Houston's ("Houston") (collectively, "Plaintiffs") Second Amended Complaint [Doc. No. 20] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Having considered the Second Amended Complaint and the parties' briefing, and for the reasons stated below, the Court grants the Motions and dismisses the action.

I.     **BACKGROUND**

    A.     **Factual Background**

        1.     Penelope Lamle

Lamle is 79 years old and resides in the Greenbrier Nursing Home in Enid, Oklahoma.[2] She is physically incapable of caring for herself. On August 3, 2021, Lamle transferred assets to Jason Lamle, her son, in exchange for a promissory note equal to $357,000.

---

[1] Shropshire was substituted for Justin Brown, the former Director of Oklahoma Department of Human Services.

[2] The Court operates on the basis of the allegations in the Second Amended Complaint and its attached exhibits incorporated by reference. If there have been updates to the status of Plaintiffs, the status of Defendants, or Plaintiffs' applications for Medicaid benefits that would impact the governing complaint or the issues raised in the briefing on the Motions, the parties have not provided those to the Court during the pendency of this action, other than the substitution of Deborah Shropshire for Justin Brown. *Cf. Estate of Schultz v. Brown*, 846 F. App'x 689 (10th Cir. 2021) (unpublished) (analyzing whether the estate's challenge to the validity of Oklahoma's process for reviewing Medicaid applications was barred by the Eleventh Amendment or on Article III grounds).

Lamle applied for Medicaid benefits on November 24, 2021. After reviewing Lamle's application, the Oklahoma Department of Human Services ("OKDHS") reached out inquiring about further details concerning her promissory note.

OKDHS asked whether: (1) Lamle was in the business of lending money or selling property, (2) the borrower offered collateral to secure the promissory note to Lamle, (3) the borrower did anything with the assets after purchasing them from Lamle, (4) Lamle transferred the promissory note to a trust or similar device, and (5) there had been a pattern of lending and repayment between Lamle and the borrower.

Lamle responded to OKDHS and stated the promissory note complied with 42 U.S.C. §1396p(c)'s requirements, and that OKDHS was not allowed to ask those questions when making a Medicaid eligibility determination. Eads, Assistant General Counsel for OKDHS, then contacted Lamle and asked the same questions. Lamle refused to answer them. Eads and Lamle emailed back and forth several times. Each time, Eads requested the answers to the questions and explained that the information was needed so OKDHS could determine if the promissory note was considered a "resource" under the applicable standards. Eads told Lamle that refusal to provide the necessary information "may result in denial of the application for eligibility/benefits." And each time, Lamle refused to answer.

On June 9, 2022, 197 days after Lamle submitted her application, OKDHS denied her application for Medicaid.

### 2. Marilyn Garrison

Garrison is 82 years old and resides at Hennessey Care Center in Hennessey, Oklahoma. She is physically incapable of caring for herself. On October 12, 2021, Garrison transferred assets to her daughter, Devra Boyd, in exchange for a promissory note equal to $721,000.

Garrison applied for Medicaid benefits on December 6, 2021. After receiving Garrison's application, OKDHS reached out to Garrison and asked her the same questions it asked Lamle. Garrison responded to the requests by explaining the promissory note met the necessary requirements.

Eads, in turn, responded on behalf of OKDHS and again requested the information. Garrison refused. Eads and Garrison emailed each other several times. Each time, Eads requested the answers to the questions explaining that refusal to provide the necessary information "may result in denial of the application for eligibility/benefits." And each time, Garrison refused to answer.

On June 9, 2022, 185 days after Garrison filed her application, OKDHS denied her application for Medicaid.

### 3. Maxine Houston

Houston is 98 years old and resides at the Share Convalescent Center in Alva, Oklahoma. She is physically incapable of caring for herself. On February 3, 2020, Houston transferred assets to T-Spur Minerals Resources L.L.C. in exchange for a promissory note equal to $270,000.

Houston applied for Medicaid benefits on January 27, 2022. After receiving Houston's application, OKDHS asked her the same questions it asked Lamle and Garrison. Houston did not answer.

On June 8, 2022, 132 days after Houston submitted her application, OKDHS denied her application for Medicaid.

### B.    Procedural Background

Plaintiffs filed this suit. Although they allege that the questions OKDHS asked them were unnecessary for determining their Medicaid eligibility, Plaintiffs answer the questions in their Second Amended Complaint.[3] Defendants moved to dismiss.

## II.    LEGAL STANDARDS

"Rule 12(b)(6) dismissal 'is appropriate if the complaint alone is legally insufficient to state a claim.'" *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017)). In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is

---

[3] "Evaluating cases for ripeness allows courts to avoid 'premature adjudication' by refraining from 'entangling themselves in abstract disagreements.'" *United States v. Doe*, 58 F.4th 1148, 1154 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 166 (2023) (quoting *United States v. Wilson*, 244 F.3d 1208, 1213 (10th Cir. 2001)). "In other words, '[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 1155 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). At this stage, it is not the Court's role to determine whether Plaintiffs are eligible for Medicaid. If Plaintiffs supply OKDHS with the information they provided the Court, it is not clear they would still be denied coverage. Since this part of Plaintiffs' claim rests on "contingent future events that may not occur as anticipated," the Court refrains from addressing or deciding the issue.

plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under this standard, the Court accepts "the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, 493 F.3d at 1177.

### III. ANALYSIS

Plaintiffs argue that Defendants violated 42 U.S.C. § 1396a(a)(8) as limited by 42 C.F.R. § 435.907(e) because they requested information that was unnecessary for determining Plaintiffs' Medicaid eligibility. They also contend that Defendants violated 42 U.S.C. § 1396a(a)(8) as defined by 42 C.F.R. § 435.912 because they failed to provide Plaintiffs' Medicaid benefits with reasonable promptness. Plaintiffs bring this action under 42 U.S.C. § 1983.[4]

---

[4] "'The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided.'" *Mandy R. ex rel. Mr. & Mrs. R. v. Owens*, 464 F.3d 1139, 1143 (10th Cir. 2006) (quoting *Burks v. Lasker*, 441 U.S. 471, 475–76 & n.5 (1979)). Thus, the Court assumes without deciding that § 1983 gives

## A. OKDHS did not violate Plaintiffs' rights by asking them questions because the requested information was necessary for OKDHS to determine their Medicaid eligibility.

"Congress created Medicaid 'to provide health care to persons who cannot afford such care.'" *Rose as next friend of Rose v. Brown*, 14 F.4th 1129, 1132 (10th Cir. 2021) (quoting *Morris v. Okla. Dep't of Hum. Servs.*, 685 F.3d 925, 928 (10th Cir. 2012)). To qualify, individuals' resources must equal $2,000 or less. *Id.* Oklahoma is required to "extend Medicaid eligibility at least as far as eligibility for Supplemental Security Income." *Id.* The Court therefore considers the rules for Supplemental Security Income when identifying resources for the purposes of evaluating Medicaid eligibility. *Id.*

The rules use two methods for characterizing resources—the regular method and trust method. *Id.* Under the regular method, an asset is a "resource" "[i]f the individual has the right, authority, or power to liquidate the property," whereas "[t]he trust method creates an exception for trusts and trust-like devices, which count as resources even when they cannot be liquidated." *Id.* at 1132–33 (quoting 20 C.F.R. § 416.1201(a)(1)). When making the determination of whether something is a "resource," the Court defers to the Social Security Administration's Program Operations Manual System ("POMS"). *Id.* at 1134 n.6.

For a promissory note to not be considered a resource, it must be from an informal loan that is bona fide. POMS SI § 1120.220. "An informal loan is a loan between

---

Plaintiffs a right of action to enforce 42 U.S.C. § 1396a(a)(8). *Okla. Chapter of Am. Acad. of Pediatrics v. Fogarty*, 472 F.3d 1208, 1212 n.1 (10th Cir. 2007) (assuming without deciding that § 1983 provides plaintiffs a right of action to sue under 42 U.S.C. § 1396a(a)(8)).

7

individuals who are not in the business of lending money or providing credit." *Rose*, 14 F.4th at 1135. "An informal loan (oral or written) is bona fide if it meets" these requirements:

1. Enforceable under State law
2. Loan agreement in effect at time of transaction
3. Acknowledgement of an obligation to repay
4. Plan for repayment
5. Repayment plan must be feasible.

*Id.* (quoting POMS SI § 1120.220(D)). For feasibility of repayment, POMS instructs those reviewing Medicaid applications "to 'consider the amount of the loan, the individual's resources and income, and the individual's living expenses.'" *Id.* at 1136–37 (quoting POMS SI § 1120.220(D)(5)). However, a reviewing entity's authority to require information from applicants is not absolute. 42 C.F.R. § 435.907(e) states:

> Limits on information.
>
> (1) The agency may only require an applicant to provide the information necessary to make an eligibility determination or for a purpose directly connected to the administration of the State plan.
>
> (2) The agency may request information necessary to determine eligibility for other insurance affordability or benefit programs.

Accordingly, the first issue the Court must consider is whether the questions OKDHS (via Eads) asked Plaintiffs were necessary for making eligibility determinations. The first question, whether Plaintiffs were in the business of lending money or selling property, goes straight to the heart of whether the promissory note was from a loan

between individuals who are not in the business of lending money or providing credit. The second question, whether Plaintiffs were provided with collateral, addresses whether repayment of the loan was feasible. If the borrowers provided Plaintiffs with valuable collateral, it supports a finding that the borrowers would be able to repay the loan by either actually paying back the loan or by Plaintiffs selling the collateral to recoup the sum of the loan. Similarly, the third question, asking what was done with the assets, goes to feasibility of repayment. If assets conveyed to the borrowers were invested, saved, sold, etc., this goes towards whether they would have sufficient money to repay the loan. The fourth question, whether the promissory notes had been transferred to a trust or similar device, addresses whether the note should be considered a resource under the trust method for characterizing resources. The fifth question, whether there had been a pattern of lending between the borrowers and Plaintiffs, sheds light on whether the loan was informal—similar to the first question.

All these questions sought information that OKDHS needed to determine whether (1) the regular or trust method should be used to characterize the loan, (2) the loan was informal, and (3) repayment was feasible. The answers to these questions would have enabled OKDHS to determine the eligibility of Plaintiffs. Because Plaintiffs allege that they refused to provide OKDHS answers to its questions and the Court determines that

the information was necessary for OKDHS to make eligibility determinations,[5] Plaintiffs have failed to state a plausible claim for relief.[6]

### B. OKDHS did not violate Plaintiffs' rights by not making eligibility determinations within 45 days because Plaintiffs refused to take a required action.

Having determined that OKDHS was allowed to ask the questions it asked Plaintiffs, and in light of Plaintiffs' allegations that they failed to answer the questions at the time, the Court now turns to the issue of whether Plaintiffs' rights were violated by not receiving an eligibility determination within 45 days. Here, they were not.

---

[5] Plaintiffs argue that the information OKDHS sought was unnecessary for determining their Medicaid eligibility. However, without answers to its questions, OKDHS was unable to determine if Plaintiffs met the requirements for a bona fide informal loan. For example, OKDHS could not determine if Plaintiffs were in the business of lending money, which is a requirement under POMS SI § 1120.220(D), if Plaintiffs did not tell it. Thus, the Court concludes the requested information was necessary.

[6] Plaintiffs interpret *Rose* as forbidding reviewing entities (such as OKDHS) from asking questions such as whether loans were between family members in the business of lending money. However, this misconstrues the Tenth Circuit's decision. *Rose* addressed whether—in addition to being an informal, bona fide loan—a promissory note must be made in good faith to not qualify as a resource. *Rose* rejected "the nine-factor test set out in *Sable v. Velez*, 437 F. App'x 73 (3d Cir. 2011) (unpublished)" because it "conflict[ed] with the substance of subsection (D) and Tenth Circuit precedent." *Rose*, 14 F.4th at 1136. For example, the *Sable* factor Plaintiffs reference, whether the lender is in the business of lending money, is explicitly accounted for in the text of subsection (D). *See* POMS SI § 1120.220(D) ("An informal loan is a loan between individuals who are not in the business of lending money or providing credit."). Therefore, whether a lender is in the business of lending money is not a factor but a requirement. Regardless of what other factors are present, "an informal loan exists *only* when the lender is 'not in the business of lending money.'" *Rose*, 14 F.4th at 1136 (quoting POMS SI § 1120.220(D)) (emphasis added).

10

The law requires promptness in eligibility determinations. 42 U.S.C. § 1396a(a)(8) provides:

> A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals . . . .

In other words, the statute requires reasonable promptness to "eligible individuals." Reasonable promptness is further expounded in 42 C.F.R. § 435.912 which, in relevant part, states:

> Except as provided in paragraph (e) of this section, the determination of eligibility for any applicant may not exceed . . . [f]orty-five days for all other applicants. The agency must determine eligibility within the standards except in unusual circumstances, for example—
>
> (1) When the agency cannot reach a decision because the applicant or an examining physician delays or fails to take a required action, or
>
> (2) When there is an administrative or other emergency beyond the agency's control.

42 C.F.R. § 435.912(c)(3)(ii), (e).

OKDHS asked Plaintiffs questions regarding their application and did not receive the information it needed to determine their eligibility. So, even though Plaintiffs did not receive an eligibility determination within 45 days, it was because they failed to answer OKDHS's questions. Because the Court deems dismissal appropriate as explained above, it does not reach Plaintiffs' remaining claims concerning injunctions and Eads' personal liability.

11

## IV.   CONCLUSION

For these reasons, the Court concludes that Plaintiffs have failed to state claims on which relief could be granted. Consequently, the Court GRANTS Eads, Shropshire, and Corbett's Motions to Dismiss [Doc. Nos. 23, 24, 26] and DISMISSES Plaintiffs' Second Amended Complaint [Doc. No. 20] with prejudice.[7]

---

[7] Plaintiffs argue that their factual allegations make dismissal inappropriate. However, "if, as a matter of law, the complaint . . . is insufficient, a motion to dismiss is proper." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1100 (10th Cir. 2017) (citation omitted). "If such a dismissal operates on the merits of the complaint, it will also ordinarily be entered with prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *see also* Steven S. Gensler, *1 Federal Rules of Civil Procedure, Rules and Commentary*, Rule 12 cmt. (updated Feb. 2024) (explaining that when "the plaintiff has failed to state a claim upon which relief may be granted, . . . courts tend to dismiss with prejudice precisely because the motion reaches the merits of the claim"). By Plaintiffs' own allegations, they did not supply OKDHS with the information it requested. No fact-finding conducted by the Court could change this reality or make Plaintiffs' claims cognizable. Therefore, Plaintiffs claims are legally insufficient, and they have failed "to state a claim for which relief may be granted.'" *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

This, however, does not prevent Plaintiffs from suing should they reapply for Medicaid and subsequently be denied after providing OKDHS with all the necessary information. This Circuit uses the "transactional test" to determine if causes of action are "identical" for purposes of claim preclusion. *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006). "'The transactional approach provides that a claim arising out of the same transaction, or series of connected transactions as a previous suit, which concluded in a valid and final judgment, will be precluded.'" *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quotations omitted)). However, "[w]here the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new 'claim,' and the second action is not barred by res judicata." *Id.* at 1150 (citation and emphasis omitted). Similarly, as the Court makes no determination regarding whether Plaintiffs are eligible for Medicaid benefits, issue preclusion would not bar Plaintiffs from litigating this issue (based on new facts) later on. *See Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue . . . .").

IT IS SO ORDERED this 29th day of May 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE